

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

**BARRY I. LEVY**
PARTNER
(516) 357-3149
barry.levy@rivkin.com

January 27, 2023

**By ECF**
Honorable Marcia M. Henry
United States Magistrate-Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Government Employees Ins. Company, et al. v. Stybel, et al.
Case No. 1:22-cv-02834-PKC-MMH

Dear Magistrate-Judge Henry:

We write on behalf of Plaintiffs (collectively "Plaintiffs" or "GEICO") in connection with the above-captioned matter, which has been filed against Defendants, Elena Borisovna Stybel, D.O. ("Stybel") and Elena Borisovna Stybel, M.D. (A Sole Proprietorship) ("Stybel Practice")(collectively, the "Stybel Defendants"). Pursuant to the Court's Order dated January 17, 2023 (the "Order") and the Court's Individual Rules, we respectfully submit this letter to address Plaintiffs' request to file an Amended Complaint in this matter naming the following additional defendants: (i) Evergreen & Remegone LLC ("Evergreen"); (ii) Yana Mironovich ("Mironovich"); (iii) New York Billing and Processing Corp. ("NY Billing"); (iv) Eric Meladze ("Meladze"); (v) Blue Tech Supplies Inc. ("Blue Tech"); and (vi) Sunstone Services Inc. ("Sunstone") (collectively the "Proposed Defendants"). Through discovery conducted to date, Plaintiffs have identified several of the John Doe Defendants who were identified in the original Complaint, and now seek to amend to (i) include the Proposed Defendants, and (ii) describe in greater detail the contours of the fraudulent scheme committed against Plaintiffs and the NY automobile insurance industry by Stybel, the Proposed Defendants, and others using Stybel Practice as the fraudulent billing vehicle. Plaintiffs' respectfully request the Court grant Plaintiffs leave pursuant to Fed. R. Civ. P. 15(a)(2) because: (i) Stybel Defendants have consented in writing to the Plaintiffs' filing of the Amended Complaint; and (ii) even absent that consent, justice so requires. Pursuant to the Order, a redline comparison between the original Complaint and the proposed Amended Complaint is attached as Exhibit "1".

By way of background, Plaintiffs' original Complaint named John Doe Defendants, who were identified as individuals and/or entities that participated in the fraudulent scheme by, among other things, unlawfully owning and controlling Stybel Practice, establishing relationships with the Clinics, and spearheading the fraudulent treatment protocols used to render medically unnecessary services. See D.E. 1. at ¶¶ 2, 5, 18, and passim. When the original Complaint was filed, Plaintiffs could not identify the individuals and/or entities associated with the scheme because of the lengths that they had gone to conceal their participation. This letter briefly outlines some of the recently discovered facts that have been obtained through non-party discovery in this action[1] and how the Proposed Defendants: (i) used Stybel Practice

---

[1] The Stybel Defendants to date have provided virtually no discovery in response to the demands that Plaintiffs have served. This is in part because of the personal circumstances associated with their counsel.



to submit more than $2.5 million of fraudulent billing to GEICO seeking reimbursement for medically useless extracorporeal shockwave therapy ("Fraudulent Services") and falsely representing that Stybel performed the Fraudulent Services at more than 35 locations in less than three months; and (ii) controlled Stybel Practice's assets (i.e., the billings and resulting funds flow) for their own benefit, all in violation of New York law. See D.E. 32-1 at ¶¶2-4, 68 and passim.

I.   Mironovich, NY Billing, Meladze, Blue Tech, and Sunstone

As detailed in the Amended Complaint, Mironovich and NY Billing (the "Testing Defendants") and Meladze, Blue Tech, and Sunstone (the "Laundering Defendants") engaged in the following conduct: (i) illegally operated and controlled Stybel Practice; (ii) engaged in illegal financial arrangements with the Clinics; (iii) in coordination with the Stybel Defendants and Evergreen, arranged to have the Fraudulent Services performed on GEICO insureds pursuant to fraudulent treatment protocols and submitted billing that systemically misrepresented: (a) the eligibility of Stybel Practice to collect no-fault benefits (b) that the Fraudulent Services were provided by a licensed healthcare provider, and (c) exaggerated the level, nature, necessity, and results of the Fraudulent Services; (iv) in coordination with the Stybel Defendants and Evergreen, arranged to have unlicensed individuals not employed by Stybel Practice, but rather employed by Trydat, Inc., Romgo Tech Service, Inc. and Seaview Services, Inc. (the "Tech Companies"), perform the Fraudulent Services; and (v) arranged for sham funding of the account receivables (i.e., the insurance billings), and directed the vast majority of the money be paid to themselves rather than to Stybel. See D.E. 32-1 at ¶¶2-4, 9, 25-27, 94-116, and passim.

These additional allegations are based on evidence Plaintiffs obtained through various non-party discovery conducted in this action, including: (i) e-mails exchanged between the Testing Defendants and the No-Fault Billing Manager at the law firm of Abrams, Fensterman, et al. ("Abrams Fensterman") directing Abrams Fensterman to send the vast majority of advances related to Stybel Practice's fraudulent claims to Blue Tech and Sunstone; (ii) e-mails showing that other funding was directed to the IOLA account of Gabriel & Moroff, P.C., and then redirected to Blue Tech and Sunstone; (iii) documents and evidence showing that Mironovich and her company coordinated the performance of the Fraudulent Services with the Tech Companies, directed the services to be performed, and coordinated the preparation and submission of the false billings to GEICO using Stybel Practice. As outlined in the Amended Complaint, Meladze and his companies worked in conjunction with the other Defendants to convert the insurance payments into cash and other untraceable currency for their own economic benefit and to fund the fraudulent scheme. Specifically, Blue Tech and Sunstone are shell companies owned by Meladze, who previously pled guilty to Conspiracy to Distribute Controlled Substance (Oxycontin) and was sentenced to 57 months in prison followed by three years supervised release (see U.S. v. Meladze et al., 2:07-cr-00070). Remarkably, the Laundering Defendants transferred over $8 million in insurance payments (including those issued by GEICO) to a jeweler in New York City that was then converted to cash and other untraceable assets (i.e., gold bullion), which was used by the Testing Defendants to support the illegal referral and kickback arrangements with the Clinics and to illegally siphon the profits of Stybel Practice to themselves and to others. See ECF 32 at ¶¶18, 26, 36.

Further, Mironovich's involvement in this scheme is not an isolated incident. In Gov't Emples. Ins. Co., et al. v. Vine, et al.,1:22-cv-02965-EK-LB (E.D.N.Y.) ("Vine"), Mironovich and NY Billing are named defendants, and their conduct, as alleged in the complaint, i.e., the illegal ownership and control of a no-fault practice that bills GEICO and other automobile insurers for Fraudulent Services, is virtually identical to the allegations in the Amended Complaint



here. Notably, in Vine, Mironovich invoked her Fifth Amendment right against self-incrimination in responding to all of Plaintiffs' first set of interrogatories and first set of document requests. See Vine, 1:22-cv-02965-EK-LB at D.E. 25.

## II.     Evergreen

As also detailed in the Amended Complaint, Stybel is the sole member of Evergreen. Through non-party discovery, Plaintiffs have gathered evidence to show that Evergreen's bank account was used to: (i) funnel money related to Stybel Practice, including payments to the Tech Companies that provided the unlicensed independent contractors who purportedly provided the Fraudulent Services; and (ii) the payment of money that Stybel received in exchange for illegally allowing the Testing Defendants and the Laundering Defendants to own and control Stybel Practice. See ECF 32-1 at ¶¶25, 33, 85.  Notably, evidence obtained from the Tech Companies reveal that, despite receiving payments solely from Evergreen, the owners/managers of the Tech Companies (i) never met Stybel, (ii) never spoke to Stybel, and (iii) only coordinated with Mironovich on the staffing and performance of the Fraudulent Services by the unlicensed technicians that were ultimately billed to GEICO through Stybel Practice. In addition to confirming that the unlicensed technicians were not employees of Stybel Practice (of which there were none) and performed the Fraudulent Services, the owners/managers of the Tech Companies have also confirmed that their technicians only provided Radial Pressure Wave Therapy, which does not qualify for reimbursement under 0101T and is markedly different from the billings submitted to GEICO by Stybel Practice. See ECF 32-1 at ¶¶100, 109-116.

## III.    Leave Should Be Granted Pursuant to Rule 15(a)

Under Fed. R. Civ. P. 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." See Forman v. Davis, 371 U.S. 178, 182 (leave to amend a complaint should be 'freely given'). Plaintiffs respectfully submit that the requirements of Rule 15 are satisfied because Defendants' have consented in writing to the filing of the Amended Complaint. See Exhibit "2". After a responsive pleading is filed, "[o]nce the adverse party has consented in writing to an amendment of a pleading, 'the court has no control over the matter under Rule 15(a).  The pleader's right to amend is not subject to the court's discretion and the court must permit the amendment to be filed.'" Zoric v. Island Taping, Inc., 2004 WL 1447953, at *1 (E.D.N.Y. 2004); citing to W.S.A., Inc. v. ACA Corp., 94 CV 1868, 1996 WL 551599, at *4 (S.D.N.Y. Sept. 27, 1996); Fern v. United States, 213 F.2d 674 (9th Cir.1954).[2]

For the reasons stated herein, the Court should grant Plaintiffs' request for leave to file the Amended Complaint because: (i) Defendants consented in writing to Plaintiffs' Amended Complaint; and (ii) because justice so requires.

---

[2] Even an analysis under Rule 15(a)(2) would warrant leave to file the Amended Complaint, as leave should be denied only "for good reason, including futility, bad faith, undue delay or undue prejudice to the opposing party." See Owens v. Centene Corp., 2021 WL 878773, 20-CV-118 (EK) (E.D.N.Y. 2021); see also Aetna Cas. And Sur. Co. V. Aniero Concrete Co. Inc., 404 F.3d 566, 603 (2d Cir 2005). The Amended Complaint is not futile because the claims are properly plead, the facts to support the claims are more than sufficient to meet the requirements of Fed R. Civ. P. 8 and 9(b) and would withstand scrutiny pursuant to Fed. R. Civ. P. 12(b)(6). Stybel Defendants would also suffer no prejudice, as evidenced by (i) their consent to Plaintiffs filing the Amended Complaint; and (ii) the fact that no party discovery has been conducted to date, due to the numerous extensions and courtesies provided to their counsel, and fact discovery is not presently scheduled to conclude for at least three (3) more months. The Amended Complaint is also not the result of any bad faith, undue delay, or dilatory motive by Plaintiffs, who sought leave to amend prior to the January 17, 2023 deadline after analyzing information and facts obtained through discovery related to the original Complaint.



The Court's attention to this request is appreciated.

                                                                                  Respectfully submitted,

                                                                                  RIVKIN RADLER LLP

                                                                                  *Barry J. Levy*

                                                                                  Barry Levy

cc:       All counsel (by ECF)

6152728.v2