UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO
GENERAL INSURANCE COMPANY and GEICO
CASUALTY COMPANY,

Docket No.:
1:22-cv-02834 (PKC)(MMH)

                Plaintiffs,

      -against-

ELENA BORISOVNA STYBEL, D.O., ELENA
BORISOVNA STYBEL, M.D. (A Sole Proprietorship),
EVERGREEN & REMEGONE LLC, YANA
MIRONOVICH, NEW YORK BILLING AND
PROCESSING CORP., ERIC MELADZE, BLUE TECH
SUPPLIES INC., SUNSTONE SERVICES INC., and
JOHN DOE DEFENDANTS "1" through "10",

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55(b)(2)

Respectfully submitted,

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
RR File No.:  5100-3277
Telephone:    (516) 357-3000
Facsimile:    (516) 357-3333

*Counsel for Plaintiffs, Government Employees
Insurance Co., GEICO Indemnity Co., GEICO General
Insurance Company and GEICO Casualty Co.*

Of Counsel:
Barry I. Levy, Esq.
Michael Vanunu, Esq.
Garin Scollan, Esq.

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTS .......................................................................................................... 2

   I.   Relevant Procedural History .................................................................................. 2

   II.   GEICO's Allegations Against the Defaulting Defendants ................................... 2

ARGUMENT ...................................................................................................................... 5

   I.   The Standard on This Motion ............................................................................... 5

   II.   GEICO's Complaint Sets Forth Facts Establishing GEICO's Entitlement to Default Judgments Against the Defaulting Defendants .......................................................... 8

       A.   GEICO is Entitled to Default Judgment Against the Defaulting Defendants on its Cause of Action for Common Law Fraud ...................................................... 8

       B.   Default Judgment Should be Entered Against the Defaulting Defendants Because There is No Just Reason for the Court to Delay Entering Partial Judgment against the Defaulting Defendants ...................................................................................... 14

           (i)   A Default Judgment Against the Defaulting Defendants Would Not Prejudice the Active Defendants Nor Risk Logically Inconsistent Outcomes ............... 15

           (ii)   Default Judgment Should be Entered Against the Defaulting Defendants Because There is a Serious Question as to their Solvency ............................ 18

           (iii)   Courts in this District Have Issued Partial Default Judgments in Highly Analogous Cases .................................................................................. 20

   III.  GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims ..................... 20

   IV.  The Court Should Impose Joint and Several Liability ...................................... 21

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Acito v. IMCERA Group, Inc.,
  47 F.3d 47 (2d Cir. 1995)....................................................................................11

Action S.A. v. Marc Rich & Co.,
  951 F.2d 504 (2d Cir. 1991)..................................................................................8

Allstate Ins. Co. v. Halima,
  2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. March 19, 2009) ...................................10

Allstate Ins. Co. v. Lyons,
  2016 U.S. Dist. LEXIS 124383 (E.D.N.Y. Sept. 12, 2016).........................6, 10, 14

Allstate Ins. Co. v. Lyons,
  843 F. Supp. 2d 358 (E.D.N.Y. 2012) ..................................................................10

Allstate Ins. Co. v. Polack,
  2012 U.S. Dist. LEXIS 141927 (E.D.N.Y. Sept. 12, 2012)...............................7, 10

Allstate Ins. Co. v. Smirnov,
  2013 U.S. Dist. LEXIS 138180 (E.D.N.Y. Aug. 21, 2013).........................7, 10, 20

Allstate Ins. Co. v. Williams,
  2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. Nov. 3, 2014).....................................10

Allstate Ins. Co. v. Williams,
  2015 U.S. Dist. LEXIS 126020 (E.D.N.Y. Aug. 28, 2015)..............................10, 14

American Home Assurance Co. v. Morris Industrial Builders, Inc.,
  192 A.D.2d 477, 597 N.Y.S.2d 27 (2d Dep't 1993) ..............................................21

Au Bon Pain Corp. v. Artect, Inc.,
  653 F.2d 61 (2d Cir. 1981) .....................................................................................6

Chubb & Son Inc. v. Kelleher,
  2006 WL 1789118 (E.D.N.Y. Mar. 24, 2006) ......................................................21

Chubb & Son, Inc. v. Kelleher,
  2010 U.S. Dist. LEXIS 141842 (E.D.N.Y. Oct. 22, 2010).......................................7

Cont'l Ins. Co. v. Huff Enters.,
  2009 U.S. Dist. LEXIS 104126 (E.D.N.Y. Nov. 6, 2009)........................................6

El Omari v. Buchanan,
    2021 WL 465431 (S.D.N.Y. Feb. 9, 2021), aff'd, 2022 WL 4454536 (2d Cir.
    Sept. 26, 2022) ...................................................................................................................15

Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.,
    2013 U.S. Dist. LEXIS 130695 (E.D.N.Y. Aug. 21, 2013)....................................................6

Gov't Emples. Ins. Co. v. Badia,
    2015 U.S. Dist. LEXIS 35224 (E.D.N.Y. Jan. 31, 2015) ..........................................6, 8, 10, 14

Gov't Emps. Ins. Co. v. Damien,
    2011 U.S. Dist. LEXIS 138365 (E.D.N.Y. Nov. 3, 2011).......................................................7

Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C.,
    2011 U.S. Dist. LEXIS 130721 .............................................................................................12

Gov't Emples. Ins. Co. v. Li-Elle Serv.,
    2013 U.S. Dist. LEXIS 31630 (E.D.N.Y. Feb. 11, 2013).....................................................10

Gov't Emples. Ins. Co. v. Sanni-Thomas,
    2015 U.S. Dist. LEXIS 135117 (E.D.N.Y. Sept. 4, 2015)...............................................10, 14

Gov't Emples. Ins. Co. v. Scheer,
    2014 U.S. Dist. LEXIS 141431 (E.D.N.Y. Aug. 18, 2014)...................................................10

Gov't Emples. Ins. Co. v. Simakovsky,
    2015 U.S. Dist. LEXIS 135657 (E.D.N.Y. Sept. 6, 2015)...............................................10, 14

Gov't Emples. Ins. Co. v. Vine,
    Case No. 1:22-cv-02965-EK-LB ...........................................................................................16

Gov't. Emps. Ins. Co v Elmwood Park Med. Group, P.C.,
    2022 U.S. Dist. LEXIS 32961 (E.D.N.Y. Feb. 23, 2022)..............................6, 8, 11, 12, 20, 21

Gov't. Emps. Ins. Co. v. Erlikh,
    2019 U.S. Dist. LEXIS 34257 (E.D.N.Y. Feb. 28, 2019)...................................6, 7, 12, 20, 21

Gov't Emps. Ins. Co. v. Esses,
    2013 U.S. Dist. LEXIS 184213 (E.D.N.Y. Sept. 27, 2013).................................................7, 10

Gov't Emps. Ins. Co. v. Eva Gateva, M.D.,
    2014 U.S. Dist. LEXIS 44878 (E.D.N.Y. Mar. 10, 2014) ...........................................7, 10, 12

Gov't Emps. Ins. Co. v. Infinity Health Prods.,
    2012 U.S. Dist. LEXIS 58058 (E.D.N.Y. Apr. 6, 2012) .......................................................12

Gov't. Emps. Ins. Co. v. Lexington Med. Diagnostic Servs., P.C.,
    2020 U.S. Dist. LEXIS 49108 (E.D.N.Y. Mar. 20, 2020).....................................................11

Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.,
    2013 U.S. Dist. LEXIS 131305 (E.D.N.Y. Sept. 13, 2013)....................................7

Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.,
    2017 U.S. Dist. LEXIS 24994 (E.D.N.Y. Feb. 21, 2017)..............................6, 12, 20

Gov't Emps. Ins. Co. v. Sheer,
    2014 WL 4966150 (E.D.N.Y. Aug. 18, 2014).........................................................20

Gov't Emps. Ins. Co. v. Spectrum Neurology Group, LLC,
    2016 U.S. Dist. LEXIS 19960 (E.D.N.Y. Feb. 17, 2016)......................6, 10, 12, 14

Government Employees Insurance Co. v. Badia,
    2015 U.S. Dist. LEXIS 33667 (E.D.N.Y. Mar. 18, 2015).......................................4

Government Employees Insurance Company v. Armengol,
    2022 U.S. Dist. LEXIS 10073, 2022 WL 432320 (E.D.N.Y. Jan. 19, 2022) .......................1, 4

Greyhound Exhibitgroup. v. E.L.U.L. Realty Corp.,
    973 F.2d 155 (2d Cir. 1993)...................................................................................7

Knowles-Carter v. Feyonce, Inc.,
    2017 WL 11567528 (S.D.N.Y. Sept. 23, 2017).....................................................15

Lazard Freres & Company v. Protective Life Insurance Company,
    108 F.3d 1531 (2d Cir.), cert. denied, 522 U.S. 864 (1997).................................13

Lerner v. Fleet Bank, N.A.,
    459 F.3d 273 (2d Cir. 2006)................................................................................11

Lewis v. S.L. & E., Inc.,
    831 F.2d 37 (2d Cir. 1987).................................................................................21

Liberty Mut. Ins. Co. v. Accurate Med. Diagnostics, PC,
    2014 U.S. Dist. LEXIS 174503 (E.D.N.Y. July 16, 2014)....................6, 10, 12, 14

Mallis v. Bankers Trust Company,
    615 F.2d 68 (2d Cir. 1980)..................................................................................13

Mitchell v. Lyons Prof'l Servs, Inc.,
    727 F. Supp. 2d 116. (E.D.N.Y. 2010) ...............................................................15

Powers v. British Vita, P.L.C.,
    57 F.3d 176 (2d Cir. 1995)..................................................................................11

S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co.,
    2012 U.S. Dist. LEXIS 38608 (E.D.N.Y. Jan. 13, 2012) .......................................6

Schwimmer v. Allstate Ins. Co.,
    176 F.3d 648 (2d Cir. 1999)................................................................20

Shields v. Citytrust Bancorp,
    25 F.3d 1124 (2d Cir. 1994)...............................................................12

State Farm Mut. Auto. Ins. Co. v. Cohan,
    2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. Dec. 30, 2009), aff'd, 409 Fed.
    Appx. 453 (2d Cir. 2011).........................................................7, 8, 10

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. Sept. 3, 2008).......................10

State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,
    589 F. Supp. 2d 221 (E.D.N.Y. Dec. 12, 2008)................................10

State Farm Mut. Auto. Ins. Co. v. Rabiner,
    749 F. Supp. 2d 94 (E.D.N.Y. 2010) ...............................................10

Terwilliger v. Terwilliger,
    206 F.3d 240 (2d Cir. 2000)...............................................................20

Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co.,
    1992 U.S. Dist. LEXIS 17633 (S.D.N.Y. Nov. 19, 1992) .....................13

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,
    109 F.3d 105 (2d Cir. 1997).................................................................8

**Statutes and Other Authorities**

11 N.Y.C.R.R. §65-3.16(a)(12) ...............................................................9

Fed. R. Civ. P. 9(b) ...............................................................................11

Fed. R. Civ. P. 55(a) ...........................................................................1, 5

Fed. R. Civ. P. 55(b)(2).....................................................................1, 6, 8

Fed. R. Civ. Proc. 54(b) ...................................................................15, 20

Moore's Federal Practice § 55.20[4] .........................................................6

N.Y. C.P.L.R. § 5001...........................................................................20

N.Y. C.P.L.R. §§ 5001(a), 5004 .............................................................21

N.Y. C.P.L.R. § 5001(b) .......................................................................20

N.Y. C.P.L.R.§ 6201(3) .........................................................................19

N.Y. Insurance Law Section 403 ....................................................................................................13

Rule 55(b)(1)(10) .........................................................................................................................5

## PRELIMINARY STATEMENT

Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO"), pursuant to this Court's April 6, 2023 Order, respectfully submit this memorandum of law in support of their motion for entry of a default judgment against Defendants Evergreen & Remegone LLC ("Evergreen"), New York Billing and Processing Corp. ("NY Billing"), Eric Meladze ("Meladze"), Blue Tech Supplies Inc. ("Blue Tech"), and Sunstone Services Inc. ("Sunstone")(collectively, the "Defaulting Defendants"),[1] pursuant to Fed. R. Civ. P. 55(b)(2). Specifically, GEICO seeks a default judgment on its Fourth Cause of Action for common law fraud against the Defaulting Defendants.[2]

The record in this matter is clear. The Defaulting Defendants were all duly served with the Summons and Amended Complaint in this action and have failed to timely appear. The Clerk of the Court, in accordance with Fed. R. Civ. P. 55(a), has entered the defaults of each of the Defaulting Defendants.  Evergreen, NY Billing, Blue Tech, and Sunstone are all New York corporations, and Meladze is an individual who does not currently serve in the United States Military. As set forth more fully below, based upon the facts established by the Defaulting Defendants' respective defaults, GEICO's Amended Complaint sets forth legally sufficient claims against each of the Defaulting Defendants.

---

[1] Because GEICO is moving for default judgment on its fraud claim, it has elected to not move on the unjust enrichment claim, because it is based on the same set of transactions.  See e.g. Government Employees Insurance Company v. Armengol, 2022 U.S. Dist. LEXIS 10073, 2022 WL 432320 at *7 (E.D.N.Y. Jan. 19, 2022).

[2] Within this memorandum of law, the "Defaulting Defendants" include some of the individuals/entities that are defined within the Amended Complaints as the "Testing Defendants" as well as all of the individuals/entities defined within the Amended Complaint as the "Laundering Defendants".  See ECF No. 35 at ¶ 4. This footnote is provided to the Court for clarification to the extent these terms are used interchangeably here.

Accordingly, GEICO respectfully requests that default judgments be entered against the Defaulting Defendants, including compensatory damages against the Defaulting Defendants, plus pre-judgment interest, along with the costs and disbursements incurred in connection with the prosecution of this action, as well as such other and further relief as to the Court may seem just and proper.

## RELEVANT FACTS

I.    **Relevant Procedural History**

GEICO commenced this action by the filing of its Complaint on May 16, 2022.  See ECF No. 1.  GEICO then amended the complaint to include claims against additional parties (including some of the Defaulting Defendants) by the filing of an Amended Complaint on February 9, 2023. See ECF No. 35. True and correct copies of the Summons and Amended Complaint (the "Amended Complaint") were served on each of the Defaulting Defendants that are the subject to this motion, and all proofs of service were subsequently filed with the Court via ECF.  See Declaration of Garin Scollan ("Scollan Decl.") at ¶5 , ECF No. 41-45.

Due to the Defaulting Defendants' failure to appear in this action, the Clerk of the Court, on GEICO's motion, entered the defaults of the Defaulting Defendants' defaults on April 5, 2023. See Scollan Decl. at ¶4 (Exhibit "4"), ECF No. 52-56.

II.    **GEICO's Allegations Against the Defaulting Defendants**

The facts relating to the claims asserted and the damages sought by GEICO in this action are set forth more fully in the Amended Complaint, as well as the Scollan Decl. (and exhibits attached thereto) and the Declaration of Kathleen Asmus ("Asmus Decl.") (and exhibits attached thereto) that accompany this memorandum of law.  GEICO respectfully refers the Court to those materials for the full contours of the fraudulent scheme.

2

By way of summary, this action seeks to recover money that was wrongfully obtained from GEICO as a result of payments made to Elena Borisovna Stybel, M.D. (A Sole Proprietorship) (the "Stybel Practice"), which is a "medical practice" purportedly owned by Elena Borisovna Stybel, D.O. ("Stybel").  The payments, made by GEICO under no-fault insurance policies, were for medically unnecessary, illusory, and otherwise non-reimbursable healthcare services styled as extracorporeal shockwave therapy (hereinafter "ESWT" or the "Fraudulent Services") that allegedly were provided to New York automobile accident victims ("Insureds"). The Defaulting Defendants, Stybel and the Stybel Practice, all acted in concert with Yana Mironovich ("Mironovich"), the owner of NY Billing, to effectuate the fraudulent scheme, which resulted in the submission of billing to GEICO alone of more than $2.5 million for the alleged performance of the Fraudulent Services at more than thirty-five (35) separate locations from July 1, 2021 to September 25, 2021.  See ECF No. 35, passim.  To accomplish the scheme, the Defendants worked in lockstep fashion with one another as well as with other individuals that were associated with the multi-disciplinary medical clinics where the Fraudulent Services were performed and that cater to a high volume of No-Fault insurance patients ("Clinics") to defraud GEICO and other automobile insurers by:

(i)     billing for services through the Stybel Practice, which was never legitimately owned or controlled by a licensed physician, but which was being operated, managed, and controlled by Mironovich, NY Billing, Evergreen (collectively, the "Testing Defendants") and Meladze, Blue Tech, and Sunstone (collectively, the "Laundering Defendants") for purposes of effectuating a large-scale insurance fraud scheme on GEICO and other New York automobile insurers;

(ii)    billing for services, to the extent provided at all, pursuant to the dictates of the Testing Defendants and the Laundering Defendants and as a result of illegal financial arrangements between the Defendants and the Clinics;

(iii)   billing for services, to the extent provided at all, pursuant to pre-determined fraudulent treatment and billing protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds;

(iv)    making claim submissions seeking payment for the billed-for services that uniformly misrepresented and exaggerated the level, nature, necessity, and results of the Fraudulent Services that purportedly were provided; and

(v)    billing for services - to the extent provided at all – performed not by Stybel or any other licensed physician, but by persons who were unlicensed, and not directly supervised by Stybel or employed by the Stybel Practice.[3]

The full contours of this multi-faceted scheme are detailed in the Amended Complaint.  As alleged and described in the Amended Complaint, the Stybel Practice had no right to receive payment for any bills submitted to GEICO because:

(i)    the Fraudulent Services were allegedly provided by the Stybel Practice, which is a medical "practice" that was not under the control and direction of Stybel, but rather, was at all relevant times operated, managed, and controlled by the other Defendants for purposes of effectuating a large-scale insurance fraud scheme on GEICO and other New York automobile insurers;

(ii)    the Fraudulent Services were provided, to the extent provided at all, pursuant to the dictates of unlicensed laypersons, not based upon legitimate decisions by licensed healthcare providers, and as a result of illegal financial arrangements established between Stybel, the Stybel Practice, the Testing Defendants, the Laundering Defendants, and the Clinics;

(iii)    the Fraudulent Services were provided, to the extent provided at all, pursuant to pre-determined fraudulent treatment and billing protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds;

(iv)    the claim submissions seeking payment for the Fraudulent Services uniformly misrepresented and exaggerated the level, nature, necessity, and results of the Fraudulent Services that purportedly were provided to Insureds; and

(v)    the Fraudulent Services, to the extent provided at all, were not provided by Stybel or any other licensed physician, but rather by persons who were unlicensed, and were neither directly supervised by Stybel nor employed by her or the Stybel Practice.

---

[3] Each of the theories here are separate aspects of the scheme, any of which render the claims fraudulent and not payable.  See e.g. Armengol, supra, 2022 U.S. Dist LEXIS 10073 (claims that are submitted by a medical practice owned/controlled by laypersons considered are fraudulent and ineligible for payment); Government Employees Insurance Co. v. Badia, 2015 U.S. Dist. LEXIS 33667 at *2 (E.D.N.Y. Mar. 18, 2015)(claims submitted by medical practice for services performed by independent contractors and resulting from kickbacks are fraudulent and ineligible for payment).

<u>See</u> ECF No. 35, <u>passim</u>.

As further set forth in the Amended Complaint, the Defaulting Defendants gained access to the Clinics by paying kickbacks to unlicensed laypersons that created and controlled the patient base at the Clinics.  In part, this was accomplished by the laundering of the advances that were paid on the Stybel Practice's claims to Meladze, Blue Tech and Sunstone, rather than to the Stybel Practice.  The kickbacks were sometimes disguised as fees ostensibly to "rent" space at the Clinics. However, these were "pay-to-play" arrangements that caused unlicensed laypersons to steer GEICO's Insureds to the Stybel Practice so that they could perform the Fraudulent Services. The unlawful kickback and payment arrangements that the Defaulting Defendants established with the Clinics were essential to the success of the fraudulent scheme because without access to the Insureds provided by the clinics, the Defendants could not have implemented the fraudulent treatment and billing protocol to bill automobile insurers through the Stybel Practice, including GEICO. <u>See</u> ECF No. 35, ¶¶s 2, 10-11, 27, 65-116.

As a result of the Defaulting Defendants' actions and fraudulent scheme described above, GEICO made $1,462,138.66 in voluntary payments to the Stybel Practice, in reliance on the fraudulent billing that the Defaulting Defendants submitted or caused to be submitted through the Stybel Practice for the Fraudulent Services. <u>See</u> Scollan Decl., ¶¶ 8 and 12; Asmus Decl., ¶ 6.

## **ARGUMENT**

I.     **The Standard on This Motion**

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must" enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the] rules."  Where the plaintiff's claim is for a sum certain, the Clerk of the Court may enter a judgment of default pursuant to Rule

55(b)(1)(10).  See Moore's Federal Practice § 55.20[4] (Matthew Bender 3d Ed). In all other cases, the party seeking the default judgment must apply to the Court.  See Fed. R. Civ. P. 55(b)(2). Accordingly, GEICO's application is being made to the Court.

"Once found to be in default, a defendant is deemed to have admitted all of the well-plead allegations in the complaint pertaining to liability and the Court accepts those allegations as true." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  See also Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., 2013 U.S. Dist. LEXIS 130695 at * 8 (E.D.N.Y. Aug. 21, 2013).  The Court, however, may also consider matters outside of the complaint in determining a defendant's liability and whether the granting of a default is appropriate. See Fed. R. Civ. P. 55(b)(2); S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co., 2012 U.S. Dist. LEXIS 38608 at *20-22 (E.D.N.Y. Jan. 13, 2012); Cont'l Ins. Co. v. Huff Enters., 2009 U.S. Dist. LEXIS 104126 at *13-16 (E.D.N.Y. Nov. 6, 2009).  Accordingly, in evaluating GEICO's application for default judgment, the Court may consider, among other things, the Amended Complaint as well as the Scollan Decl. (and exhibits) and the Asmus Decl. (and exhibits), submitted herewith.

Notably, Courts within this district have granted default judgments sought by GEICO and other insurers awarding damages on similar claims and allegations as those contained in GEICO's Amended Complaint here. See, e.g., Gov't. Emps. Ins. Co. v Elmwood Park Med. Group, P.C., 2022 U.S. Dist. LEXIS 32961 (E.D.N.Y. Feb. 23, 2022); Gov't. Emps. Ins. Co. v. Erlikh, 2019 U.S. Dist. LEXIS 34257 (E.D.N.Y. Feb. 28, 2019); Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., 2017 U.S. Dist. LEXIS 24994 (E.D.N.Y. Feb. 21, 2017); Allstate Ins. Co. v. Lyons, 2016 U.S. Dist. LEXIS 124383 (E.D.N.Y. Sept. 12, 2016); Gov't Emps. Ins. Co. v. Spectrum Neurology Group, LLC, 2016 U.S. Dist. LEXIS 19960 (E.D.N.Y. Feb. 17, 2016); Gov't Emples. Ins. Co. v. Badia, 2015 U.S. Dist. LEXIS 35224 (E.D.N.Y. Jan. 31, 2015); Liberty Mut. Ins. Co. v. Accurate

Med. Diagnostics, PC, 2014 U.S. Dist. LEXIS 174503 (E.D.N.Y. July 16, 2014); Gov't Emps. Ins. Co. v. Eva Gateva, M.D., 2014 U.S. Dist. LEXIS 44878 (E.D.N.Y. Mar. 10, 2014).

In each of those matters, the Court concluded that the plaintiffs, just as GEICO has in this matter, competently alleged and sufficiently established their entitlement to judgment against the Defendants on the fraud claims. See e.g., Erlikh, 2019 U.S. Dist. LEXIS 34257; Allstate Ins. Co. v. Smirnov, 2013 U.S. Dist. LEXIS 138180 (E.D.N.Y. Aug. 21, 2013); Gov't Emps. Ins. Co. v. Esses, 2013 U.S. Dist. LEXIS 184213 (E.D.N.Y. Sept. 27, 2013); see also Allstate Ins. Co. v. Polack, 2012 U.S. Dist. LEXIS 141927 (E.D.N.Y. Sept. 12, 2012).

As a result of their default, the Defaulting Defendants are liable to GEICO for the full amount of damages on GEICO's Fourth Cause of Action for common law fraud. See Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc., 2013 U.S. Dist. LEXIS 131305 (E.D.N.Y. Sept. 13, 2013); see also Chubb & Son, Inc. v. Kelleher, 2010 U.S. Dist. LEXIS 141842 (E.D.N.Y. Oct. 22, 2010). A "default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" Moreover, the "movant must prove that the 'compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist. LEXIS 125653, at *9-10 (E.D.N.Y. Dec. 30, 2009), aff'd, 409 Fed. Appx. 453 (2d Cir. 2011) (quoting Greyhound Exhibitgroup. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1993)). Moreover, "[i]n a scheme where there are repeated fraudulent acts by multiple defendants, plaintiffs are entitled to recover once for every fraudulent action, and each defendant who participated in the fraudulent act is jointly and several liable for the amount of damage cause." Gov't Emps. Ins. Co. v. Damien, 2011 U.S. Dist. LEXIS 138365, at *22-23 (E.D.N.Y. Nov. 3, 2011).

While this Court may conduct a hearing under Rule 55(b)(2) to determine the amount of damages, "[a]n evidentiary hearing is <u>not</u> required so long as there is a basis for the damages awarded[,]" such as "detailed affidavits and other documentary evidence." <u>Cohan</u>, 2009 U.S. Dist. LEXIS 125653 (<u>citing</u> <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997) and <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991)) (emphasis added); <u>see also</u> <u>Badia</u>, 2015 U.S. Dist. LEXIS 35224 at *13.  As such, the Defaulting Defendants are jointly and severally liable to Plaintiffs for actual damages under GEICO's common law fraud cause of action, which equals $1,462,138.66.

GEICO demonstrates below that the facts pleaded in its Amended Complaint are legally sufficient to support the causes of action asserted against the Defendants. In addition, in the accompanying declarations and exhibits annexed thereto, GEICO sets forth additional information to demonstrate an adequate basis for its claims, but also sufficient proof of its damages such that a hearing on damages should not be required. Accordingly, GEICO respectfully requests entry of a default judgment against the Defaulting Defendants.

## II.     GEICO's Complaint Sets Forth Facts Establishing GEICO's Entitlement to Default Judgments Against the Defaulting Defendants

### A.     GEICO is Entitled to Default Judgment Against the Defaulting Defendants on its Cause of Action for Common Law Fraud

GEICO's Amended Complaint provides more than sufficient facts to satisfy the elements necessary to succeed on the common law fraud claims against the Defaulting Defendants. Specifically, the Amended Complaint establishes a large scale fraud scheme consisting of the submission of bills and supporting documents to GEICO through the Stybel Practice involving: (1) material misrepresentations or omissions of fact, (2) knowledge of the Defendants' scheme and the falsity of the representations (<u>i.e.</u>, scienter), (3) an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.  <u>Elmwood Park Med. Group,</u>

supra, 2022 U.S. Dist. LEXIS 32961, at *15. As the facts alleged in the Amended Complaint are deemed admitted by virtue of the Defaulting Defendants' default, GEICO is entitled to default judgment against the Defaulting Defendants.

The Amended Complaint annexes a detailed chart (Exhibit "1") that chronicles thousands of individual fraudulent claims, each of which contained misrepresentations and omissions that the Defaulting Defendants made, or caused to be made, in the billing and supporting documents that were submitted to GEICO through the Stybel Practice as part of the fraudulent scheme. The actual misrepresentations and omissions contained in the thousands of individual fraudulent claims included, for example, that:

(i)     the representation that Stybel had performed the Fraudulent Services and that her name, license and the tax identification number of the Stybel Practice was being legitimately used to bill for the Fraudulent Services, making them eligible for payment pursuant to 11 N.Y.C.R.R. §65-3.16(a)(12) when, in fact, Stybel never performed any of the services and the Testing Defendants and the Laundering Defendants unlawfully and secretly controlled, operated and managed the Stybel Practice;

(ii)    the representation that the billed-for services had been rendered and were reimbursable, when, in fact, the claim submissions uniformly misrepresented and exaggerated the level, nature, necessity, and results of the services that purportedly were provided;

(iii)   the representation that the billed-for services were eligible for reimbursement, when, in fact, the services were provided -- to the extent provided at all -- pursuant to illegal kickback and referral arrangements between the Defendants and the Clinics;

(iv)    the representation that the billed-for services were medically necessary when they were provided – to the extent provided at all – pursuant to the dictates of unlicensed laypersons, not based upon legitimate decisions by licensed healthcare providers; and

(v)     the representation the billed-for services were eligible for payment because the services were provided by Stybel, when, in fact, the services were provided by unlicensed individuals that were never directly supervised by Stybel nor employed by the Stybel Practice. See ECF No. 35, passim.

Each of these misrepresentations and omissions described above, which is significantly detailed in the Amended Complaint, is a separate ground to establish the Defaulting Defendants' fraud. See, e.g., Lyons, 2016 U.S. Dist. LEXIS 124383; Spectrum Neurology Group, LLC, 2016 U.S. Dist. LEXIS 19960; Badia, 2015 U.S. Dist. LEXIS 35224; Gov't Emples. Ins. Co. v. Sanni-Thomas, 2015 U.S. Dist. LEXIS 135117 (E.D.N.Y. Sept. 4, 2015).

These types of allegations of misrepresentations clearly establish fraud, and conduct in substantially similar circumstances have been found to be sufficient to establish fraud. See, e.g., Lyons, 2016 U.S. Dist. LEXIS 124383; Spectrum Neurology Group, LLC, 2016 U.S. Dist. LEXIS 19960; Badia, 2015 U.S. Dist. LEXIS 35224; Sanni-Thomas, 2015 U.S. Dist. LEXIS 135117; Gov't Emples. Ins. Co. v. Simakovsky, 2015 U.S. Dist. LEXIS 135657 (E.D.N.Y. Sept. 6, 2015); Allstate Ins. Co. v. Williams, 2015 U.S. Dist. LEXIS 126020 (E.D.N.Y. Aug. 28, 2015); Accurate Med., 2014 U.S. Dist. LEXIS 174503; Allstate Ins. Co. v. Williams, 2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. Nov. 3, 2014), Gov't Emples. Ins. Co. v. Scheer, 2014 U.S. Dist. LEXIS 141431 (E.D.N.Y. Aug. 18, 2014); Gateva, 2014 U.S. Dist. LEXIS 42648; Smirnov, 2013 U.S. Dist. LEXIS 138180; Esses, 2013 U.S. Dist. LEXIS 184213;  Gov't Emples. Ins. Co. v. Li-Elle Serv., 2013 U.S. Dist. LEXIS 31630 (E.D.N.Y. Feb. 11, 2013);  Polack, 2012 U.S. Dist. LEXIS 141927; Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 374-375 (E.D.N.Y. 2012); State Farm Mut. Auto. Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 99-100, 103 (E.D.N.Y. 2010); Cohan, supra, 2009 U.S. Dist. LEXIS 125653; Allstate Ins. Co. v. Halima, 2009 U.S. Dist. LEXIS 22443 at *23 (E.D.N.Y. March 19, 2009); State Farm Mut. Auto. Ins. Co.  v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 at *52 (E.D.N.Y. Sept. 3, 2008); State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C., 589 F. Supp. 2d 221, 235-237 (E.D.N.Y. Dec. 12, 2008).

GEICO's Amended Complaint also establishes scienter. While "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" (Fed. R. Civ. P. 9(b)), plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)). The requisite "strong inference" of fraud may be established by either: (i) alleging facts to show that defendants had both motive and opportunity to commit fraud; or (ii) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Lerner, 459 F.3d at 290-291; see also Elmwood Park Med. Group, 2022 U.S. Dist. LEXIS 32961, at *20-21; Gov't. Emps. Ins. Co. v. Lexington Med. Diagnostic Servs., P.C., 2020 U.S. Dist. LEXIS 49108, at *15 (E.D.N.Y. Mar. 20, 2020).

Although GEICO need only plead facts showing that the Defaulting Defendants either had both the motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness, the Amended Complaint pleads facts establishing both. For example, the Amended Complaint pleads detailed facts establishing that the Testing Defendants and the Laundering Defendants masterminded and implemented the fraudulent scheme through which the Stybel Practice was used as a vehicle to submit large-scale bogus No-Fault insurance billing to GEICO and other insurers. The Amended Complaint also specifies that the Defaulting Defendants not only knew that affirmative misrepresentations were being made when fraudulent claims were submitted to GEICO and other insurers, but that they did so intentionally as part of a calculated scheme to profit from payment of the claims. See ECF No. 35, passim. The Amended Complaint further pleads detailed facts that the Defaulting Defendants acted, at minimum, with a reckless disregard for the harm that their misrepresentations might cause to GEICO. See Id. As such, scienter is manifest. See Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995); see also

11

Gov't Emples. Ins. Co. v. Hollis Med. Care, P.C., 2011 U.S. Dist. LEXIS 130721 at fn. 11 (E.D.N.Y. Nov. 9, 2011).

The Amended Complaint also satisfies the scienter element because it sets forth specific facts demonstrating both a motive and the opportunity to commit fraud. "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.  Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." Shields v. Citytrust Bancorp, 25 F.3d 1124, 1130 (2d Cir. 1994). In this case, the fraudulent scheme undertaken by the Defaulting Defendants not only had a "likely prospect of achieving concrete benefits" by their scheme, but it actually did realize "concrete benefits" because the billing from the Stybel Practice, through the Defaulting Defendants actions, resulted in the Defaulting Defendants and others directly receiving more than $2 million. See ECF No. 35, ¶¶ 81-84.

Multiple Courts within this District have held substantially similar allegations sufficient to establish scienter. See, e.g., Elmwood Park Med. Group, 2022 U.S. Dist. LEXIS 32961, at *20-21; Erlikh, 2019 U.S. Dist. LEXIS 34257, at *16-17; Parkway Med. Care, supra, 2017 U.S. Dist. LEXIS 24994; Spectrum Neurology Group, LLC, 2016 U.S. Dist. LEXIS 19960; Accurate Med., 2014 U.S. Dist. LEXIS 174503; Gateva, 2014 U.S. Dist. LEXIS 44878 at *11-13; see also Gov't Emps. Ins. Co. v. Infinity Health Prods., 2012 U.S. Dist. LEXIS 58058 at *15 (E.D.N.Y. Apr. 6, 2012).  The same conclusion should be reached here.

Additionally, the allegations in the Amended Complaint more than sufficiently allege that GEICO justifiably and reasonably relied on the accuracy of the claim documents submitted or caused to be submitted through the Stybel Practice. Justifiable reliance is established so long as the reliance was not so "utterly unreasonable, in light of the information open to [it], that the law

may properly say that [its] loss is [its] own responsibility." <u>Transamerica Ins. Finance Corp. v. Fireman's Fund Ins. Co.</u>, 1992 U.S. Dist. LEXIS 17633 at * 23 (S.D.N.Y. Nov. 19, 1992). In addition, because the representations and/or omissions are matters that were within the exclusive knowledge of the Defaulting Defendant, the reasonableness of GEICO's reliance cannot be challenged. <u>See</u> <u>Lazard Freres & Company v. Protective Life Insurance Company</u>, 108 F.3d 1531, 1542 (2d Cir.), <u>cert.</u> <u>denied</u>, 522 U.S. 864 (1997) (citing <u>Mallis v. Bankers Trust Company</u>, 615 F.2d 68, 80 (2d Cir. 1980)).

Here, GEICO's Amended Complaint not only pleads actual reliance, it also pleads the factual basis for GEICO's reliance, thereby explaining why it was justifiable. Specifically, facts demonstrating – among other things – that: (i) the claims were falsely verified; (ii) the Defaulting Defendants acted to conceal the fraud; and (iii) GEICO was under statutory and contractual obligations to process the Stybel Practice's claims within 30 days, which forced GEICO to rely on the facially-valid documents submitted or caused to be submitted by the Defaulting Defendants. <u>See</u> ECF No. 35, ¶¶ 117-124. Indeed, pursuant to Section 403 of the New York State Insurance Law, all claim forms are required to be verified subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. <u>Id.</u>

Thus, every claim form submitted or caused to be submitted to GEICO using the Stybel Practice verified that the information provided was truthful and that the submission of any materially false information or concealment was a crime. Moreover, it was reasonable for GEICO to rely on the bills submitted through the Stybel Practice given the steps taken by the Defaulting Defendants to conceal the fraud.

In this context, Courts regularly have found that insurers justifiably may rely on claims forms submitted in support of reimbursement under New York No-Fault laws. See Spectrum Neurology Group, LLC, 2016 U.S. Dist. LEXIS 19960 (plaintiff sufficiently alleged reasonable reliance by explaining GEICO's duties under the no-fault laws, and by claiming that GEICO made payments in reliance on the fact that the bills appeared, on their face, to have been submitted in accordance with the law); Lyons, 2016 U.S. Dist. LEXIS 124383; Badia, 2015 U.S. Dist. LEXIS 35224; Sanni-Thomas, 2015 U.S. Dist. LEXIS 135117; Simakovsky, 2015 U.S. Dist. LEXIS 13567; Williams, 2015 U.S. Dist. LEXIS 126020; Accurate Med., 2014 U.S. Dist. LEXIS 174503.

Finally, GEICO has established the requisite injury. The Amended Complaint alleges that GEICO was injured as a direct result of the fraudulent scheme perpetrated by the Defaulting Defendants, and GEICO paid $1,462,138.66 in reliance on the facially valid billing submitted using the name of the Stybel Practice, reasonably believing that it had an obligation to do so. See Asmus Decl. at ¶¶ 6, Exhibit "1" annexed thereto (setting forth the actual amounts GEICO paid to the Stybel Practice that are the subject of the allegations in the Amended Complaint). Accordingly, GEICO is entitled to default judgment on its Fourth Cause of Action against the Defaulting Defendants for common law fraud.

**B.    Default Judgment Should be Entered Against the Defaulting Defendants Because There is No Just Reason for the Court to Delay Entering Partial Judgment against the Defaulting Defendants**

On April 6, 2023, the Court issued an Order directing Plaintiffs to move for default judgment against the Defaulting Defendants within 60 days. Given the factual circumstances laid out in the Amended Complaint against the Defaulting Defendants, and Plaintiffs' inability to seek a pre-judgment order attaching the assets of the Defaulting Defendants, there is no just reason for the Court to delay entering a partial judgment against the Defaulting Defendants.

Under Fed. R. Civ. Proc. 54(b), the Court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." There are "no fixed criteria for invoking" a partial judgment, and this Court has broad discretion in issuing a judgment under Fed. R. Civ. P. 54(b). See Mitchell v. Lyons Prof'l Servs, Inc., 727 F. Supp. 2d 116, 119-120. (E.D.N.Y. 2010). A partial final judgment is appropriate where a "defendant's solvency or ability to pay a judgment in the future is in question." Id. at 120. In addition, a default judgement against the Defaulting Defendants would not (i) prejudice actively litigating defendants, i.e. Stybel, the Stybel Practice, and Mironovich (cf. Knowles-Carter v. Feyonce, Inc., 2017 WL 11567528, at *5 (S.D.N.Y. Sept. 23, 2017)); or (ii) risk creating a situation in which it would be "logically inconsistent for some defendants to be held liable while others are not" liable.  Id.; cf. El Omari v. Buchanan, 2021 WL 465431, at *3 (S.D.N.Y. Feb. 9, 2021), aff'd, 2022 WL 4454536 (2d Cir. Sept. 26, 2022).

Under these standards, default judgment should be entered against the Defaulting Defendants.

### (i) A Default Judgment Against the Defaulting Defendants Would Not Prejudice the Active Defendants Nor Risk Logically Inconsistent Outcomes

The entry of a default judgment against the Defaulting Defendants will be consistent with the eventual outcome of the case against the remaining Defendants based on the overwhelming evidence GEICO has obtained in this matter. Given the previous and expected future assertions of Fifth Amendment privilege by the remaining Defendants, in combination with documentary evidence supporting all other allegations in the Amended Complaint, Plaintiffs respectfully submit that the appearing Defendants have no viable defense to a motion for summary judgment, and that Plaintiffs will ultimately be entitled to judgment as a matter of law.

For example, in response to Plaintiffs' discovery demands, Stybel and the Stybel Practice's response to virtually every Document Request was "any responsive materials which may be in Defendants' control, custody or possession are protected by the Act of Production doctrine" under the Fifth Amendment. See Scollan Decl. ¶31, Exhibit "9" (Document Responses). Additionally, Stybel and the Stybel Practice have invoked their Fifth Amendment privilege against self-incrimination in response to virtually all of Plaintiffs' Interrogatories, including Interrogatories asking Stybel to identify: (i) all duties she performed for the Stybel Practice; (ii) all payments received concerning the Fraudulent Services; (iii) all individuals who were given access to her electronic signature; (iv) all individuals who performed the Fraudulent Services; and (v) all Interrogatories relating to Stybel and the Stybel Practice's relationship with Mironovich and the Defaulting Defendants. See Scollan Decl. ¶ 31, Exhibit "10" (Interrogatory Responses).

Plaintiffs anticipate that Mironovich will also invoke her Fifth Amendment privilege against self-incrimination in response to Plaintiffs' interrogatories and requests for production that were served on her on April 18, 2023, because (i) Mironovich did so in virtually every response to GEICO's interrogatories and document requests that were served on her in a related action, Gov't Emples. Ins. Co. v. Vine, Case No. 1:22-cv-02965-EK-LB (see Scollan Decl. ¶ 31, Exhibits "11" and "12" (Responses to Production); and (ii) financial discovery and non-party discovery (as detailed below) has established that Mironovich – along with other laypersons as outlined in the Amended Complaint – illegally owned and controlled the Stybel Practice.

Even more, Plaintiffs deposed the owners/operators of two of the tech companies that provided services on behalf of the Stybel Practice, Trydat, Inc. and Romgo Tech Service Inc. (the "Tech Companies"). These depositions formed the basis of the allegations in the Amended Complaint that the Testing Defendants and the John Doe Defendants established relationships with

the Tech Companies to, among other things, provide unlicensed technicians to perform the Fraudulent Services at the Clinics at the direction of Mironovich, the other Testing Defendants and the John Doe Defendants. See ECF No. 35, ¶¶s 10, 25-26.

The owners/operators of the Tech Companies both testified in this matter as follows: (i) despite every bill submitted to GEICO by the Stybel Practice indicating that Stybel performed the Fraudulent Services, Stybel was never in the treatment room when the Fraudulent Services were being performed by the Tech Companies; (ii) none of their technicians ever met or spoke to Stybel; (iii) the owner/operators never met or spoke with Stybel; (iv) Mironovich provided the forms to use for the Fraudulent Services; (v) Mironovich paid the Tech Companies in exchange for providing the Fraudulent Services by physically handing the owners/operators of the Tech Companies checks issued from Evergreen's bank account, and Mironovich did so at NY Billing's office; (vi) the Tech Companies' technicians that provided the Fraudulent Services were not employed by Stybel or the Stybel Practice because they were all paid as independent contractors; and (vii) confirmed Mironovich provided the schedules for what Clinics needed the Tech Companies on a given day. The owner/operators of the Tech Companies also provided documents to corroborate this testimony, including emails exchanged with NY Billing and text messages exchanged with Mironovich where Mironovich provided forms for the Fraudulent Services and excel spreadsheets which scheduled the Tech Companies technicians at numerous no-fault clinics. See Scollan Decl., ¶¶ 32-33 and Exhibits 13 and 14 (Deposition Transcripts).

Considering the Stybel and the Stybel Practice's invocation of the Fifth Amendment in their responses to the Plaintiffs' discovery demands and the non-party testimony and documentation provided by the owners/operators of the Tech Companies confirming Mironovich's illegal control of the Stybel Practice and using Evergreen's bank account to pay the Tech

Companies, Stybel's failure to perform and/or supervise the healthcare services, and Mironovich hiring unlicensed independent contractors to provide the Fraudulent Services, Plaintiffs aver it is highly unlikely that there would be a logically inconsistent outcome between a default judgment against the Defaulting Defendants and an ultimate judgment against Stybel, the Stybel Practice, and Mironovich.

### (ii) Default Judgment Should be Entered Against the Defaulting Defendants Because There is a Serious Question as to their Solvency

Here, partial final judgment against the Defaulting Defendants is appropriate because there is a serious question as to whether they will be able to pay a judgment to GEICO. Financial discovery in this case has shown that Defaulting Defendants Meladze, Blue Tech and Sunstone – identified as the Laundering Defendants in the Amended Complaint – transferred over $11.4 million of advances received for no-fault insurance billing to GEICO and other automobile insurers (including millions associated with GEICO claims) to a jeweler in New York City that was then converted to untraceable gold bullion. See Scollan Decl., ¶¶ 34-35 and Exhibit "17" (Deposition Transcript).  Financial discovery also demonstrated that Evergreen – whose sole member is Stybel – existed to perpetuate the Defendants' fraudulent scheme, including: (i) receiving a portion of the proceeds of the fraudulent scheme that were funneled to Evergreen's bank account at NY Billing's direction; (ii) Evergreen issued over $120,000.00 in checks to the Tech Companies which provided independent contractors to perform the Fraudulent Services; (iii) Evergreen issued thousands of dollars in rent payments to healthcare providers for access to the patients at the Clinics; and (iv) issued checks to the Tech Companies at the direction of Mironovich.  See Scollan Decl., ¶ 36 and Exhibits "13", "14" and "18".  Notably, Evergreen filed for dissolution within months of being

named as a defendant in this action. <u>See</u> Scollan Decl., ¶ 23 and Exhibit "7" (Articles of Dissolution).

If the Defaulting Defendants appeared in this action, Plaintiffs would have sought permission to file a motion seeking pre-judgment attachment of Meladze, Blue Tech, and Sunstone's property under N.Y. C.P.L.R.§ 6201(3), because the financial records demonstrate their intent to frustrate the enforcement of all potential future judgments, including a future judgment by GEICO, by their immediate liquidation of assets to untraceable cash. <u>See</u> Scollan Decl., ¶¶ 34-35.  Beyond the strategic dissolution, there is also a question as to Evergreen's solvency or ability to pay a judgment in the future based on the illicit nature of its bank account, as well as the financial issues of its sole member, Stybel, including:

(i)     Stybel being in significant financial debt, with over $261,000.00 in outstanding judgments against her and her Suffolk-based private practice at the time of the Amended Complaint; and

(ii)    checks issued to Stybel's other professional corporations being illegally exchanged for cash at a check-cashing facility in New Jersey by Alla Kuratova, who was previously indicted for recruiting individuals to act as phony patients in connection with an illegal prescription drug trafficking ring.  From approximately May 2017 through May 2021, Kuratova illegally exchanged over $35 million worth of checks, made out to over 1,000 different companies, for cash. <u>See</u> ECF No. 35, ¶¶ 63, 66.

If the Defaulting Defendants appeared in this action, these financial records would arguably qualify for reasons to obtain a pre-judgment attachment of their assets. However, due to their default, Plaintiffs intend to promptly seek a default judgment because the liquidation of Laundering Defendants' assets into untraceable cash, Evergreen's dissolution, and the financial issues of Evergreen's sole member, Stybel, establishes a serious question as to whether the Defaulting Defendants will be able to pay any judgment obtained by GEICO.

### (iii) Courts in this District Have Issued Partial Default Judgments in Highly Analogous Cases

In analogous cases involving No-Fault insurance fraud schemes, Courts within this district have issued default judgments against some of the named defendants under Fed. R. Civ. P. 54(b). See Gov't Emps. Ins. Co. v. Sheer, 2014 WL 4966150 (E.D.N.Y. Aug. 18, 2014) (recommending default judgment against partial defendants who pled guilty to criminal charges that overlap with charges with the complaint because it is unlikely that further proceedings will call into question plaintiffs' right to judgment against defaulting defendants and plaintiffs' assert a danger that recovery may be hampered if entry of judgment is delayed); see also Smirnov, 2013 WL 5407224 (same).

Accordingly, the Plaintiffs aver that there is sufficient grounds to issue a default judgment against the Defaulting Defendants under Fed. R. Civ. P. 54(b).

## III.   GEICO is Entitled to Pre-Judgment Interest on its Fraud Claims

GEICO is entitled to pre-judgment interest against the Defaulting Defendants on its common law fraud claims. See Elmwood Park Med. Group, 2022 U.S. Dist. LEXIS 32961, at *29-30.  Under New York law, an award of pre-judgment interest on damages for fraud is mandatory. Parkway Med. Care, 2017 U.S. Dist. LEXIS 24994, at *45.

The award of prejudgment interest is a substantive issue, governed here by the substantive law of the forum state, namely New York law. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2d Cir. 2000); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999); Erlikh, supra, 2019 U.S. Dist. LEXIS 34257, at *27.  The source of the right to pre-judgment interest in New York is set forth in N.Y. C.P.L.R. § 5001. Specifically, C.P.L.R. § 5001(b) states that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed". Furthermore,

pre-judgment interest is calculated at the non-compounded rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004; Erlikh, 2019 U.S. Dist. LEXIS 34257, at *27.

Here, it is suggested that interest be calculated from the first day following the quarter in which the payments were made by GEICO to the Defaulting Defendants on the fraudulent claims. See, e.g., American Home Assurance Co. v. Morris Industrial Builders, Inc., 192 A.D.2d 477, 597 N.Y.S.2d 27, 28 (2d Dep't 1993)(applying pre-judgment interest according to dates when payments made by insurer to its insured). This method is consistent with the purpose of pre-judgment interest, which is to "compensate plaintiffs for the use of funds that were wrongfully diverted by the defendant." Chubb & Son Inc. v. Kelleher, 2006 WL 1789118 at *5 (E.D.N.Y. Mar. 24, 2006) citing to  Lewis v. S.L. & E., Inc., 831 F.2d 37, 40 (2d Cir. 1987) and has been adopted by Courts within this District.  See, e.g., Elmwood Park Med. Group, 2022 U.S. Dist. LEXIS 32961, at *30-31; Erlikh, 2019 U.S. Dist. LEXIS 34257, at *27-28.

GEICO's proposed pre-judgment interest calculations under this method (a method more conservative than that permitted under the CPLR) for payments made based on the fraudulent scheme perpetuated against it by the Defaulting Defendants totals $223,473.97. The mathematical calculations associated with GEICO's pre-judgment interest calculations are described more fully set forth in the Scollan Declaration. See Scollan Decl., ¶¶ 13-16.

## IV.   **The Court Should Impose Joint and Several Liability**

The Amended Complaint in this case alleges significant facts establishing that the Defaulting Defendants acted jointly and/or concurrently with the appearing Defendants to produce a single injury, and as a result, the Defaulting Defendants should be held jointly and severally liable for GEICO's damages, including pre-judgment interest, as alleged in the GEICO's Fourth Cause of Action. See Elmwood Park Med. Group, 2022 U.S. Dist. LEXIS 32961, at *27-29; Erlikh, 2019 U.S. Dist. LEXIS 34257, at *22-24. The injury that GEICO suffered because of the scheme

perpetrated by the Defaulting Defendants is indivisible and was caused by the coordinated activity of each.  This should render them collectively liable for GEICO's damages. (See Asmus Decl. at ¶¶ 4-6, Exhibit "1" annexed thereto).

## **CONCLUSION**

For the reasons set forth in this memorandum of law, GEICO's motion for default judgment against the Defaulting Defendants should be granted as set forth herein.

Dated:  Uniondale, New York
       June 6, 2023

Respectfully submitted,

RIVKIN RADLER LLP

By: _/s/ Barry I. Levy_
       Barry I. Levy (BL 2190)
       Michael Vanunu (MV 4167)
       Garin Scollan (GS 7780)
926 RXR Plaza
Uniondale, NY 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333

*Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company*